## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ANIBAL PAGÁN-ROMERO,

**Petitioner,**

v.

**CIVIL NO. 19-2008 (RAM)**

UNITED STATES OF AMERICA,

**Respondent.**

### OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is petitioner Anibal Pagán-Romero's ("Petitioner") *Amended Motion to Vacate, Set Aside, Or Correct Sentence Pursuant to 28 U.S.C. § 2255* (the "*Motion*"). (Docket No. 17).[1] For the reasons detailed below, the *Motion* is **DENIED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a medical doctor who operated the Policlínica Familiar Shalom medical clinic in Quebradillas, Puerto Rico for many years. On May 8, 2014, he was indicted and charged with twenty-one counts of conspiracy to commit mail fraud and sixty-one substantive counts of mail fraud. (Case No. 14-333, Docket No. 3). The indictment alleged that Petitioner conspired with others over the course of several years to defraud the American Family

---

[1] All record citations are to this Court's docket in Civil Case No. 19-2008 unless specified otherwise. Citations to Criminal Case. No. 14-333 (GAG) are styled as "Case No. 14-333."

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 2 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 2 of 22
Civil No. 19-2008 (RAM)                                                    2

Life Assurance Company ("AFLAC") by filing false claims under its accidental injury policies. The United States of America's (the "Government") theory was that Petitioner falsely certified and submitted claims for patients he had not treated, earning between $10 and $20 for each claim. Petitioner contended the scheme was executed without his knowledge by a group of his employees – particularly Noel Pagán-Rivera ("Noel") and Jessica Graulau ("Jessica") – who copied his signature to certify the claims. The case went to trial before the Honorable Gustavo A. Gelpí (hereinafter the "Trial Court"), and Petitioner was ultimately convicted on all counts by the jury on October 5, 2015. (Case No. 14-333, Docket No. 1093).

Following the jury trial, Petitioner moved for a new trial, claiming the jury was improperly influenced by access to a dictionary during its deliberations. (Case No. 14-333, Docket No. 1120). The Trial Court ultimately denied the motion, and the First Circuit affirmed that decision. *See* United States v. Pagan-Romero, 894 F.3d 441 (1st Cir. 2018). Petitioner did not raise issues of ineffective assistance of counsel on appeal.

On September 24, 2019, Petitioner mailed in a pro se *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence*. (Docket No. 3). In March 2020, the Trial Court appointed Petitioner counsel, who thereafter filed the pending *Motion* on October 29, 2020. In the *Motion*, Petitioner contends his trial counsel, Ms.

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 3 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 3 of 22
Civil No. 19-2008 (RAM)                                          3

Irma Valldejuli (hereinafter "Defense Counsel"), was ineffective for four reasons.[2] Namely, Petitioner contends Defense counsel failed to: (1) properly question key witnesses; (2) "argue against or sidestep almost 200 arguable objections during the most important testimony" at trial; (3) call a key witness during the trial; and (4) object to the Court's admission of inadmissible extrinsic evidence. (Docket No. 17 at 4-16). The Government filed a memorandum in opposition to the *Motion* on July 20, 2021. (Docket No. 48). The case was then transferred to the undersigned on November 2, 2021. (Docket No. 67).

On February 3, 2022, the Court held an evidentiary hearing concerning the third ground for ineffective assistance – Defense Counsel's failure to call David Rivera, who Petitioner argues was a key trial witness. (Docket No. 78). Following the hearing, the parties submitted post-hearing briefs. (Docket Nos. 86; 87).

## II.   APPLICABLE LAW

### A. 28 U.S.C. § 2255

Petitioner seeks relief pursuant to 28 U.S.C. § 2255 ("Section 2255"), which provides that:

> A prisoner in custody under sentence of a

---

[2] Petitioner's original pro se motion listed additional grounds for vacating his sentence that were not included or developed in the *Motion*. While Petitioner's counsel requested that those additional arguments not be deemed waived, the Court will not address those arguments. (Docket No. 17 at 1 n.1). "It is well settled that arguments raised in a perfunctory manner in a section 2255, with no attempt or effort to develop argumentation, are deemed waived." Velazquez-Malave v. United States, 2020 WL 3270731, at *6 (D.P.R. 2020) (citing Rivera-Orta v. United States, 243 F. Supp. 3d 202, 207 (D.P.R. 2017); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 4 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 4 of 22
Civil No. 19-2008 (RAM)                                                    4

> court established by Act of Congress claiming
> the right to be released upon the ground that
> the sentence was imposed in violation of the
> Constitution or laws of the United States, or
> that the court was without jurisdiction to
> impose such sentence, or that the sentence was
> in excess of the maximum authorized by law, or
> is otherwise subject to collateral attack, may
> move the court which imposed the sentence to
> vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Section 2255 also establishes a one-year period to file a motion requesting relief pursuant to the statute. *See* 28 U.S.C. § 2255(f). This filing period begins to run from the latest of:

> (1) the date on which the judgment of
>     conviction becomes final;
>
> (2) the date on which the impediment to
>     making a motion created by governmental
>     action in violation of the Constitution
>     or laws of the United States is removed,
>     if the movant was prevented from making
>     a motion by such governmental action;
>
> (3) the date on which the right asserted was
>     initially recognized by the Supreme
>     Court, if that right has been newly
>     recognized by the Supreme Court and made
>     retroactively applicable to cases on
>     collateral review; or
>
> (4) the date on which the facts supporting
>     the claim or claims presented could have
>     been discovered through the exercise of
>     due diligence.

Id.

Here, Petitioner's *Motion* was timely filed. His criminal conviction became final on October 15, 2018, the day the Supreme

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 5 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 5 of 22
Civil No. 19-2008 (RAM)                                              5

Court denied certiorari in his case. *See* <u>Dixon v. United States</u>, 729 F. App'x 16, 19 (1st Cir. 2018) (citing <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003)). He placed his original motion in the prison mailing system on September 24, 2019, within one year of the date his conviction became final. (Docket Nos. 3 at 13; 89; 90).

**B. Ineffective Assistance of Counsel**

"The right to legal representation in a criminal proceeding, and by extension the right to a fair trial, plays a crucial role in the adversarial system embodied in the Sixth Amendment[.]" <u>Fernandez-Garay v. United States</u>, 996 F.3d 57, 61 (1st Cir. 2021) (internal quotation marks and citation omitted). Thus, "attorneys must deliver, at minimum, 'effective' representation or 'adequate legal assistance' to their clients." <u>Id.</u> at 61-62. When the adequacy of representation is challenged, courts must consider two factors to determine whether "counsel's assistance was so defective as to require reversal of a conviction." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, the Court must ask "whether counsel's representation fell below an **objective standard of reasonableness.**" <u>Fernandez-Garay</u>, 996 F.3d at 62 (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 366 (2010)) (emphasis added). Next, the Court must "ask whether there is a **reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.**" <u>Id.</u> (emphasis added). "A

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 6 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 6 of 22
Civil No. 19-2008 (RAM)                                              6

showing of some conceivable effect on the outcome is not enough,"
but "there is no requirement that the defendant prove that the
errors were more likely than not to have affected the verdict."
Dugas v. Coplan, 506 F.3d 1, 9 (1st Cir. 2007) (internal quotation
marks and citations omitted). A petitioner must make both showings
to prevail. *See* Strickland, 466 U.S. at 687. "In making this
determination," the Court "must consider the totality of the
evidence before the . . . jury." Id. at 695.

### III.   ANALYSIS

**A. Failure to Properly Question Key Witnesses**

Petitioner first contends Defense Counsel failed to properly
question two key witnesses – Noel and Petitioner himself – which
"prevented her from presenting [Petitioner's] defense to the
jury." (Docket No. 17 at 5). The claims related to each witness
are addressed in turn below.

### 1. Noel Pagán-Rivera

Noel was one of Petitioner's ex-employees who Petitioner
asserted carried out the fraudulent AFLAC scheme without his
knowledge or involvement. The other primary ex-employee to
testify, Jessica, was cooperating with the Government, so Noel's
testimony in favor of Petitioner was particularly important both
to undermine Jessica's testimony and to present Petitioner's
theory to the jury. At trial, Defense Counsel elicited key
testimony from Noel, including that: (i) Petitioner was not aware

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 7 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 7 of 22
Civil No. 19-2008 (RAM)                                                 7

Jessica and Noel were selling claims; (ii) Jessica and Noel hid
their handwritten notes and the AFLAC logs in a controlled medical
cabinet that only Jessica had the key to "so [Petitioner] would
not see them;" and (iii) Noel never showed Petitioner the logs he
prepared or received. (Case No. 14-333, Docket No. 1089 at 37, 33-
34, and 55-56, respectively).

Nonetheless, Petitioner asserts Defense Counsel failed to
properly question Noel for two reasons. First, he faults Defense
Counsel for "lumbering through an awkward line of questioning that
saw the prosecutor raise constant objections" before Defense
Counsel was able to lay a proper foundation to admit statements
made by Jessica in furtherance of her conspiracy with Noel. (Docket
No. 17 at 6) (citing Case No. 14-333, Docket No. 1089 at 7-11).
This argument is unavailing because: (a) the transcript reveals
Defense Counsel faced only a few objections during this initial
questioning, and (b) Petitioner concedes the jury was ultimately
presented with Jessica's statements. (Case No. 14-333, Docket No.
1089 at 7-11; Docket No. 17 at 6). Thus, Defense Counsel was able
to lay an adequate foundation to admit Jessica's statements and
Petitioner suffered no prejudice from her handling of the
objections.

Second, Petitioner faults Defense Counsel for failing to
adequately elicit testimony that Noel knew Jessica was preparing
AFLAC logs and claim forms without Petitioner's knowledge or

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 8 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 8 of 22
Civil No. 19-2008 (RAM)                                              8

consent. (Docket No. 17 at 6). Petitioner argues this testimony was crucial, as it "would have bestowed the jury with a competing version that would have contradicted Jessica's testimony that [Petitioner] knew and led the scheme." Id. While the Court agrees this competing testimony was important, the Court takes issue with Petitioner's argument that "[t]he jury was never presented with that crucial alternative version of facts[.]" Id. Defense Counsel undoubtedly faced numerous objections during her questioning of Noel – a point addressed in more detail below. *See infra* § III.B. However, as noted above, the jury was presented with the important pieces of Noel's testimony, including the fact that Petitioner was not aware Noel and Jessica were selling claims. (Case No. 14-333, Docket No. 1089 at 37). Thus, the Court rejects this argument.

### 2. Dr. Pagán-Romero

Petitioner next contends Defense Counsel erred because she was unable to admit an important recording during her direct examination of Petitioner. (Docket No. 17 at 6-7). During that direct examination, Defense Counsel attempted to admit a recording of an undercover FBI visit to Petitioner's office on December 5, 2007. Petitioner asserts this recording "was of paramount importance" to his defense because it would show that, in December 2007, he was treating individuals he believed to be AFLAC patients. Id. at 7. This would directly contradict Jessica's prior testimony because she had told the jury Petitioner was *not* treating AFLAC

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 9 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 9 of 22
Civil No. 19-2008 (RAM)                                              9

patients during this time period. Id. The Government objected to the introduction of the recording because Petitioner's trial testimony indicated he did not remember the December 5, 2007 FBI visit. In particular, Petitioner asserted he treated a *female* FBI agent on December 5. However, the two undercover officers who went to his clinic that day were both male. (Case No. 14-333, Docket No. 1286 at 64-65). Defense Counsel ultimately chose not to admit the recording during Petitioner's direct examination. Defense Counsel explained to the Court that she made the decision in consultation with her colleague, but Petitioner asserts the decision was flawed and was a product of Defense Counsel "simply panick[ing]." (Case No. 14-333, Docket No. 1286 at 125; Docket No. 17 at 7).

Regardless of whether Defense Counsel made a reasonable tactical choice or simply panicked, the Court finds Petitioner suffered no prejudice from this decision. While Petitioner claims the recording "was never introduced into evidence and the jury was never able to consider it," the parties stipulated to the admission of the recording the following day. (Docket No. 17 at 7; Case No. 14-333, Docket No. 1216 at 74-75). The jury even received transcripts of the recording. (Case No. 14-333, Docket No. 1216 at 75-76). Therefore, Petitioner's ineffective assistance of counsel argument fails on this ground.

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 10 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 10 of 22
Civil No. 19-2008 (RAM)                                              10

### B. Handling of Objections

Petitioner also asserts Defense Counsel was "constitutionally ineffective" for "failing to argue against or sidestep almost 200 arguable objections" made by the Government. (Docket No. 17 at 8-10). In particular, Petitioner points to one line of important testimony that Defense Counsel allegedly had to abandon due to her inability to handle the Government's objections. This testimony concerned whether Petitioner had prepared a specific AFLAC form that contained his signature or whether, as he contended, the form was prepared by someone else using a copy of his signature. Id. at 8-9. The Government repeatedly objected to the form of Defense Counsel's questions regarding whether Petitioner prepared the form. (Case No. 14-333, Docket No. 1286 at 42-44). The Trial Court sustained the Government's objections and, during a sidebar discussion, instructed Defense Counsel to probe the issue using only open-ended questions. Id. at 45. Defense Counsel explained to the Trial Court that she had already tried the various ways she could think of to rephrase her question. Id. The Trial Court then suggested that Defense Counsel simply ask Petitioner what he knew about this AFLAC form to determine if he had prepared it. Id. at 46. Shortly thereafter, Defense Counsel asked Petitioner what he knew about how the document in question was prepared, and he responded, "I don't know." Id. at 47.

While Defense Counsel undoubtedly had a difficult time

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 11 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 11 of 22
Civil No. 19-2008 (RAM)                                                    11

rephrasing her questions to elicit this important testimony, her representation was not ineffective. She competently explained to the Trial Court during sidebar discussions what testimony she was attempting to elicit and how she was trying to ask the question open-endedly. After the Trial Court instructed her how best to ask the question, she was able to elicit testimony from Petitioner that he did not know how the form was prepared – the precise testimony Petitioner wanted the jury to hear. A review of the record undercuts Petitioner's assertion that Defense Counsel failed to argue against the Government's objections and simply abandoned the line of questioning regarding the AFLAC form.

Petitioner's general claim that Defense Counsel was ineffective for failing to adequately handle the Government's many objections is similarly unavailing. With the exception of the one line of questioning just discussed, Petitioner does not suggest *how* Defense Counsel should have argued against any objections or effectively rephrased her questions. Nor does he identify any "important testimony" that was withheld from the jury as a result of Defense Counsel's alleged failures. For example, as discussed above, despite the Government's objections during Noel's direct examination, Defense Counsel elicited what Petitioner considered to be Noel's most important testimony – that Petitioner did not know about the AFLAC scheme and that Noel and Jessica were taking actions to hide it from him. *See supra* § III.A.1. This severely

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 12 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 12 of 22
Civil No. 19-2008 (RAM)                                                12

weakens any claim of prejudice Petitioner is asserting. Petitioner also fails to substantiate his conclusory allegation that the majority of the Government's objections were frivolous. The Court need not give weight to such conclusory allegations or self-interested characterizations. *See* United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

In summary, though the Government aggressively prosecuted this case and subjected Defense Counsel to numerous objections at trial, Defense Counsel's handling of the objections did not fall "below an objective standard of reasonableness." Fernandez-Garay, 996 F.3d at 62. She was able to present the jury with the key testimony and evidence Petitioner needed to explain his defense.

### C. Failure to Call David Rivera As A Witness

Petitioner next contends Defense Counsel was ineffective because she failed to call David Rivera ("Rivera") as a witness at trial. (Docket No. 17 at 10-12). As noted above, the Court held a hearing on this claim and the parties submitted post-hearing briefs concerning this issue. (Docket Nos. 78; 86; 87).

The First Circuit has stated that "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993). Attorneys must consider that "[t]he witness may not testify as anticipated, or the witness's demeanor or character may impress the jury

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 13 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 13 of 22
Civil No. 19-2008 (RAM)                                                13

unfavorably and taint the jury's perception of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused." Id. (citations omitted). For this reason, "strategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable*." Phoenix v. Matesanz, 233 F.3d 77, 82 (1st Cir. 2000) (quoting Strickland, 466 U.S. at 690) (emphasis in original).

Despite this strong presumption in favor of Defense Counsel's professional judgment, Petitioner contends Defense Counsel's decision not to call Rivera "was so patently unreasonable that it rendered [her] performance ineffective." (Docket No. 17 at 11-12) (citing, *inter alia*, Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). Petitioner contends Rivera would have testified that Rivera personally saw Petitioner's secretary and her sister (collectively, the "Mercados") altering AFLAC claim forms outside of Petitioner's clinic and outside of his presence. Id. at 11. Rivera also would have testified that he saw altered AFLAC claim forms in his home and Petitioner's secretary's home. Id. Thus, Petitioner asserts Rivera's testimony was crucial for his case as "it would make little sense for [Petitioner's] employees to move these AFLAC claim forms outside of the clinic" if Petitioner was involved in the scheme. Id. at 12.

The Government retorts that Defense Counsel's decision to not

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 14 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 14 of 22
Civil No. 19-2008 (RAM)                                                    14

call Rivera was a sound tactical one which involved weighing the expected benefits of his testimony and the risks associated with calling him to the stand. (Docket No. 48 at 9-10). In particular, the Government asserts Rivera's testimony at the evidentiary hearing showed how little he actually knew about the AFLAC scheme. (Docket No. 86 at 2-4). Moreover, there was a legitimate concern that Rivera would commit perjury if he testified, as he made statements to the FBI that were inconsistent with his proffered testimony. For this reason, the Trial Court appointed Rivera his own counsel. (Docket Nos. 40; 42). The Government contends Defense Counsel had a legitimate and reasonable concern that if she called Rivera as a witness, he would be subject to vigorous and effective cross-examination by the Government concerning these prior inconsistent statements. (Docket No. 86 at 6-7). Further, the Government argues Rivera's combative and evasive demeanor at the evidentiary hearing indicates he would not have presented himself well to the jury, further supporting the decision not to call him as a witness. Id. at 4-5.

After reviewing the briefs and considering the testimony at the evidentiary hearing, the Court finds Defense Counsel's decision not to call Rivera as a witness was reasonable given the circumstances. It is clear Defense Counsel's primary reason for not calling Rivera was the high likelihood he would be subject to effective cross-examination concerning inconsistent statements he

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 15 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 15 of 22
Civil No. 19-2008 (RAM)                                              15

made to the FBI. (Docket No. 83 at 78, 86). Defense counsel was
concerned both for the damage effective cross-examination would do
to Rivera's credibility, and its potential impact on the
credibility of Petitioner's case as a whole. Id. at 86. Such
concerns are certainly reasonable and valid. See, e.g., Cohen v.
United States, 2013 WL 5882923, at *4 (S.D.N.Y. 2013) ("The
decision that Petitioner not testify at trial in order to avoid
being subject to potential cross-examination on any inconsistent
testimony was also a reasonable strategic decision."); United
States v. Dohan, 2013 WL 1276549, at *11 (N.D. Fla. 2013) ("Based
upon his familiarity with the prospective witness, Moscowitz made
an informed, strategic determination not to expose Higgins to
impeachment on cross-examination, and his client to the
potentially incriminating fruit of such questioning. Although
defendant takes issue with this strategy in hindsight, he has not
carried his burden to show that the calculation was so plainly
unreasonable that no competent attorney would have made it.").

Petitioner avers Defense Counsel's cross-examination concerns
were unwarranted because "the United States could not cross-
examine and impeach Mr. Rivera with his 2012 [FBI] statement as a
prior inconsistent statement unless he adopted that report," which
he would not do. (Docket No. 87 at 8 n.3). However, this argument
is unavailing for two reasons. First, Defense Counsel explained
that she was primarily concerned that the Government would impeach

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 16 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 16 of 22
Civil No. 19-2008 (RAM)                                            16

Rivera by calling the FBI agent who conducted the underlying interview, not by using the report itself. (Docket No. 83 at 78). Defense Counsel believed that, should the Government successfully question the agent, it would then be difficult to rehabilitate Rivera's credibility. Id. at 102. Defense Counsel was particularly conscious of the inherent credibility that government agents could have in he-said-she-said scenarios, despite any curative jury instructions to the contrary. Id. at 102-03. Petitioner's argument, which appears in a brief footnote, fails to explain why that thought process was objectively unreasonable.

Second, Petitioner fails to cite any rule of evidence or otherwise substantiate his argument that the Government would have been categorically barred from impeaching Rivera with the statements in his 2012 FBI report unless he adopted those statements. The Court is left to assume Petitioner is relying on Federal Rule of Evidence 613(b), which provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible . . . if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it[.]" Fed. R. Evid. 613(b). To Petitioner's point, several circuits have "affirmed the exclusion, under Rule 613, of interview memoranda prepared by law enforcement that the witness had not adopted." United States v. Stadtmauer, 620 F.3d 238, 267 n.35 (3d Cir. 2010) (citing United States v.

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 17 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 17 of 22
Civil No. 19-2008 (RAM)                                                17

Adames, 56 F.3d 737, 744-45 (7th Cir. 1995); United States v. Saget, 991 F.2d 702, 710 (11th Cir. 1993); United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992)). However, the First Circuit has stated that "[a]ny form of statement is acceptable for impeachment by prior inconsistent statement" and that Federal Rule of Evidence 613(b) "has no requirement that the witness have adopted the prior statement." United States v. Catalan-Roman, 585 F.3d 453, 464 n.12 (1st Cir. 2009) (internal quotation marks and citation omitted). Additionally, short of attempting to present the report itself for impeachment purposes, Petitioner does not explain why the Government could not ask Rivera more generally about statements he made to the FBI and attempt to elicit the fact that Rivera previously made conflicting statements. Petitioner carries the burden to show Defense Counsel's representation fell below an objective standard of reasonableness. See Fernandez-Garay, 996 F.3d at 62. His failure to adequately explain why the rules of evidence and binding precedent would have entirely precluded the Government from impeaching Rivera with the statements in the 2012 FBI report proves fatal to this argument.

Defense Counsel's concerns about Rivera's potential exposure on cross-examination must also be contrasted with the expected benefit Rivera would provide to Petitioner's case if he testified at trial. The evidentiary hearing showed that Rivera's testimony would not have been as exculpatory as Petitioner portrays in his

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 18 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 18 of 22
Civil No. 19-2008 (RAM)                                              18

briefing. Most notably, Rivera admitted at the hearing that he did not know whether Petitioner knew what the Mercados were doing, including whether Petitioner asked the Mercados to edit any documents or whether he knew the Mercados were altering the AFLAC forms. (Docket No. 83 at 51, 64-65). Thus, Rivera could not have competently testified at trial regarding the key issues in the case. Defense Counsel recognized the deficiencies in Rivera's potential testimony before deciding not to call him as a witness. When asked at the evidentiary hearing whether Rivera's testimony was enough to exculpate Petitioner, Defense Counsel responded, "obviously no." Id. at 86.

Petitioner asserts Rivera would have been most useful insofar as his testimony would have corroborated Noel's. (Docket No. 87 at 5-7). As detailed above, see supra § III.A.1., Noel was a key defense witness who testified that Petitioner was unaware of his employees' fraudulent scheme. (Case No. 14-333, Docket No. 1089 at 37). Despite Noel's strong testimony, however, Petitioner wanted corroboration from a "disinterested witness" such as Rivera, who was not an employee at Petitioner's clinic. (Docket No. 87 at 7). In response, Defense Counsel explained that, in her professional opinion, Noel "was an excellent witness that transmitted" the defense's theory. (Docket No. 83 at 109). Therefore, Rivera's testimony would not present the jury with many additional facts, significantly lowering the utility of using Rivera as a witness.

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 19 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 19 of 22
Civil No. 19-2008 (RAM)                                                    19

Petitioner fails to show that Rivera's corroborating testimony was so important that, despite the risks associated with calling him, Defense Counsel's failure to use Rivera at trial was patently unreasonable.

Finally, Defense Counsel had to weigh the risk that Rivera would say nothing at all if called to testify. She recounted at the evidentiary hearing the conversation she had with Rivera's appointed counsel, who advised Rivera not to testify. Id. at 84. While Defense Counsel admitted she could have subpoenaed Rivera, she explained that she did not know if he had been counseled to plead the fifth, and that she could not ask his attorney to divulge the contents of their attorney-client communications on that subject. Id. at 111. The chance a supposedly favorable witness called by the defense would plead the fifth, and that Defense Counsel would not know for sure if that was going to happen until he took the stand, presented an additional significant risk to using Rivera.

Overall, in Defense Counsel's reasonable judgment, the risks associated with having Rivera testify outweighed the benefits. Petitioner's ineffective assistance of counsel claim on this ground therefore fails.

### D. Failure to Object to Use of Extrinsic Evidence for Impeachment

Finally, Petitioner contends Defense Counsel was ineffective because she failed to object when the Government offered

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 20 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 20 of 22
Civil No. 19-2008 (RAM)                                                    20

impermissible extrinsic evidence to impeach Petitioner's character for truthfulness. (Docket No. 17 at 12-16). Specifically, the Government sought to impeach Petitioner at trial by offering extrinsic evidence that, in addition to defrauding AFLAC, he had defrauded other healthcare providers by billing them for services rendered while he was traveling outside of Puerto Rico. Petitioner contends this line of questioning ran afoul of Federal Rule of Evidence 608(b), which "prohibit[s] the introduction of extrinsic evidence of a specific instance of conduct to attack or support any witness's character for truthfulness." Id. at 14.

While Petitioner asserts Defense Counsel failed to object to this line of questioning, the record makes clear that Defense Counsel objected on multiple occasions. First, she objected to the Government's oral motion *in limine* and then vigorously objected during a sidebar discussion before the jury heard was presented with the extrinsic evidence. (Case No. 14-333, Docket Nos. 1286 at 97-98; 1216 at 3-12). Despite these objections, the Trial Court ruled in the Government's favor. The Trial Court went as far as to comment on the risks Petitioner undertook when deciding to testify in his own defense and indicated it would not restrict questioning concerning credibility. (Case No. 14-333, Docket No. 1216 at 11-12) ("I did tell him if you take the stand, the government will have a field day. You have a Fifth Amendment right when it goes to credibility[.]"). Considering the Trial Court's unwillingness to

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 21 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 21 of 22
Civil No. 19-2008 (RAM)                                                    21

stop the Government from probing Petitioner's character for truthfulness, including with extrinsic evidence, Counsel's decision not to continue objecting was not constitutionally ineffective. *See, e.g.*, Haynes v. Lacey, 1995 WL 500474, at *5 (E.D.N.Y. 1995) (finding that "counsel's failure to object to questions already determined [by the court] to be appropriate cannot be considered defective.").

Petitioner also faults Defense Counsel for failing to address the innocent explanation as to why Petitioner was billing these healthcare providers for services rendered while he was not in Puerto Rico. (Docket No. 17 at 13). He argues the billing discrepancies were a product of the capitated contracts he had with the healthcare providers. Id. Once again, a complete review of the record shows that Petitioner was asked directly about capitated contracts and explained how they work to the jury. (Case No. 14-333, Docket No. 1216 at 83-86). This argument is therefore unavailing.

**E. Cumulative Error**

Lastly, Petitioner has not successfully argued that the totality of Defense Counsel's errors resulted in prejudice. The First Circuit has repeatedly stated when ruling on claims of ineffective assistance of counsel that, "[a]bsent any particularized error, there can be no cumulative error." Field v. Hallett, 37 F.4th 8, 22 (1st Cir. 2022) (quoting Williams v. Drake,

Case 3:14-cr-00333-RAM   Document 1407   Filed 10/27/22   Page 22 of 22
Case 3:19-cv-02008-RAM   Document 92   Filed 10/27/22   Page 22 of 22
Civil No. 19-2008 (RAM)                                                22

146 F.3d 44, 49 (1st Cir. 1998)). For the reasons detailed in this Opinion and Order, Petitioner has not identified any particularized error committed by Defense Counsel during his trial. Thus, "there can be no cumulative error." Id.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's *Motion* at Docket No. 17 is **DENIED**. No certificate of appealability shall be issued as Petitioner has failed to make a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). Petitioner may still seek a certificate directly from the United States Court of Appeals for the First Circuit pursuant to Rule 22(b)(1) of the Federal Rules of Appellate Procedure. Judgment of **DISMISSAL WITH PREJUDICE** shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of October 2022.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge